IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANTONIO REYES-VIZCARRANDO,

Defendant.

CRIM. NO. 19-481 (SCC)

**OPINION AND ORDER**

The United States has filed a motion *in limine*, asking the Court to exclude defendant Antonio Reyes-Vizcarrando's expert testimony on the grounds that it is irrelevant, misleads the jury, confuses the issues, and wastes time. Docket No. 54. Reyes-Vizcarrando opposed. Docket No. 59. At a pretrial conference, we discussed the parties' positions further. After careful consideration, we grant the United States' motion.

**I.**

A grand jury has charged Reyes-Vizcarrando with health care fraud and conspiracy to commit health care fraud under 18 U.S.C. §§ 1347 and 1349. Docket No. 1. The indictment alleges that he, among other things, submitted

false claims to Medicare, Medicaid, and private insurance providers. *Id.* at pg. 5.

The parties agree that Reyes-Vizcarrando and a physician-staffing group, Emergency Services Group ("ESG"), entered into an oral contract in which he agreed to provide medical services in the Menonita Hospital System's emergency facilities. *See, e.g.*, Docket No. 44, pg. 3; Docket No. 54, pg. 7. The United States contends that, under ESG and Menonita's contract, only Menonita could use certain billing codes and that Reyes-Vizcarrando knew of this restriction and was subject to it as ESG's employee, Docket No. 54, pg. 7, whereas Reyes-Vizcarrando says that his oral contract with ESG allowed him to use those codes to bill for his medical services, Docket No. 44, pg. 3. The United States argues that the billing rights at issue here—for Medicare Part C, Medicaid, and private insurance—can be orally assigned and that Reyes-Vizcarrando assigned them through his oral agreement with ESG. Docket No. 54, pg. 7. Reyes-Vizcarrando, in contrast, claims that an oral assignment is

unenforceable. Docket No. 59, pg. 9. He says that he needed to fill out a CMS-855R form to assign his billing rights. *Id.* Because he did not assign these rights to ESG or Menonita by means of an 855R form, his argument goes, it is them—not him—that did the illegal billing.

Reyes-Vizcarrando intends to call two experts who will testify that a provider must fill out an 855R form to assign his billing rights and that an oral assignment is unenforceable. Docket No. 59, pg. 7. The United States asks us to exclude this testimony on the grounds that it is irrelevant and admitting it would be misleading, confusing, and a waste of time. Docket No. 54, pg. 1. Reyes-Vizcarrando counters that it will help the jury better understand Medicare's legal and regulatory complexities. Docket No. 59, pg. 1. At the pretrial conference, we explained that we were concerned that the experts were purporting to instruct the jury on the law, but the parties responded largely by rehashing the arguments in their filings.

The trial judge is the "'gatekeeper' for expert evidence, with the responsibility of 'ensuring that an expert's testimony

both rests on a reliable foundation and is relevant to the task at hand.'" *Currier v. United Techs. Corp.*, 393 F.3d 246, 251 (1st Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). That is, it must be "relevant and fit[] the facts of the case." *United States v. Shay*, 57 F.3d 126, 133 (1st Cir. 1995). And "the proponent of evidence bears the burden of demonstrating its admissibility." *United States v. Tetioukhine*, 725 F.3d 1, 6 (1st Cir. 2013).

Reyes-Vizcarrando argues first that his experts will testify that the United States' theory—*i.e.*, "that the reassignment of Medicare claims under part C can be conducted pursuant to an 'oral agreement,'" Docket No. 59, pg. 2—"is false and unsupported," *id.* This, he says, the experts will do by testifying to the "usual and customary practices of hospitals when reassigning Medicare Part B and C, and the Anti-Kickback Statute's prohibition on oral contracts for medical services." *Id.* at 2–3. To be sure,

"customs and practices of an industry are proper subjects for expert testimony." *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 55 (1st Cir. 2006). But Reyes-Vizcarrando's experts intend to give their views on industry practice in order to establish a legal proposition—that an oral assignment of billing rights is unenforceable. Both in his opposition to the United States' motion to exclude the expert testimony and at the pretrial conference, he made clear that the purpose of the expert testimony concerning reassigning Medicare billing rights is to prove that an 855R form is required to reassign them and, thus, an oral assignment is unenforceable. *See* Docket No. 59, pg. 7 ("[T]he Government's new position that an enforceable oral contract existed and that an 855 is not required is rejected by both Puerto Rican law [and] Defense experts . . . ."); *id.* at 9 ("[A]s both Dr. Reyes' experts have opined, the 855R Form was required for an entity to bill for Part C services using Dr. Reyes' billing privileges."); *see also* Docket No. 38, pg. 1 (stating in his expert witness disclosure that one of the experts is "a Medicare credentialing expert that will testify as to the

legal rules and requirements involving a health care provider . . . reassigning his/her benefits to another provider, specifically the necessity of filing a CMS 855R form."). This testimony impinges on the trial judge's role to instruct the jury on the applicable law.

"It is black-letter law that 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (quoting *United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995)); *see also id.* ("In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge."). Testimony concerning questions of law, accordingly, "is not helpful to the jury and so does not fall within the literal terms" of Rule 702. *Id.* at 100. But there is a caveat: while "[e]xperts generally may not testify on pure issues of law, such as the meaning of statutes or regulations," "courts have permitted regulatory experts to testify on complex statutory or regulatory frameworks when that

testimony assists the jury in understanding a party's actions within that broader framework." *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430–31 (7th Cir. 2020) (citations omitted); *cf. Pelletier*, 470 F.3d at 55 (explaining that there are some situations where experts are "permitted to testify about the law applicable to the case"). Here, however, the experts' testimony is not seeking to help the jury understand Reyes-Vizcarrando's actions within a broader regulatory framework—it seeks instead to convince the jury that an oral assignment of billings rights is legally unenforceable. *See, e.g.*, Docket No. 59, pg. 7; *see also* Docket No. 44-1, pg. 7 ("For an employer to be legally allowed to bill for services to Medicare rendered by an employed or contracted provider, the employer must obtain a completed CMS 855R form . . . ."); *id.* at pg. 10 ("[I]f there is no record of a CMS 855R form that is signed by Dr. Reyes . . . , then the employer has no legal right to file claims . . . ."). Even if Reyes-Vizcarrando wanted to admit the testimony concerning the 855R form to prove that it is *generally used* in the industry, he has not explained why

that is relevant and fits the facts of a case where the parties agree that an 855R form was *not used*. *See* Docket No. 54, pg. 4; Docket No. 59, pg. 7.

To summarize, if Reyes-Vizcarrando is offering the expert testimony concerning the 855R form to show that an oral assignment is unenforceable, the experts are instructing the jury on the law. If he is offering it instead to show that an 855R form is generally used in the industry, he has not explained to us why this is relevant in a case where the parties agree that the form was not used. *See United States v. Mehanna*, 735 F.3d 32, 66 (1st Cir. 2013) ("Under [Rule] 702, a district court pondering whether to admit expert testimony must determine, among other things, whether the proffered testimony is tied closely enough to the facts to 'assist the trier of fact.' To forge this link, there must be 'a valid connection . . . between the expert's testimony and a disputed issue.'" (first quoting *Daubert*, 509 U.S. at 591–93; and then quoting *Shay*, 57 F.3d at 133 n.5)). Either way, the testimony is inadmissible.

Moreover, had we agreed that testimony stating that

an 855R form is generally used in the industry would be helpful to the jury, we would have excluded it under Rule 403 on the ground that it would confuse the issues and mislead the jury. *Tetioukhine*, 725 F.3d at 6 ("[Expert testimony], even if it passes the requirements of Rule 702, remains subject to Rule 403's balancing test."). Any probative value this testimony might have as to whether Reyes-Vizcarrando orally assigned his billing rights without filling out the form would be substantially outweighed by the danger of confusing the issues and misleading the jury. The United States argues that an 855R form is only required for Medicare Part B, not Part C, which is the Medicare part at issue. Docket No. 54, pg. 4. And Reyes-Vizcarrando argues that it is required for both parts. Docket No. 59, pg. 5. Neither cites any authority supporting their position. We heard a preview of this back-and-forth in the pretrial conference; it risks confusing the issues because this Part B versus Part C disagreement would distract the jury from the main issues in this case and might mislead the jury into concluding that the oral assignment is ineffective because

the form was not filled out. These dangers substantially outweigh any probative value the testimony might have.

Reyes-Vizcarrando argues next that his experts will testify to "the Anti-Kickback Statute's prohibition on oral contracts for medical services." Docket No. 54, pg. 3; *see also id.* at pg. 10 ("[Reyes-Vizcarrando's] experts are required to testify about the . . . requirement for written contracting . . . ."). This proposed testimony, however, "consists of legal conclusions." *Nieves-Villanueva*, 133 F.3d at 100 (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997)); *see also United States v. Mikutowicz*, 365 F.3d 65, 73 (1st Cir. 2004) ("Expert testimony proffered solely to establish the meaning of a law is presumptively improper." (quoting *United States v. Prigmore*, 243 F.3d 1, 18 n.3 (1st Cir. 2001))). Because testifying that the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, "prohibit[s] . . . oral contracts for medical services" would constitute instructing the jury on the law, that testimony is inadmissible. *See United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("[T]he meaning of the statute and

regulations . . . [is] a subject for the court, not for testimonial experts. The only legal expert in a federal courtroom is the judge." (citation omitted)).

In the pretrial conference, Reyes-Vizcarrando stated—for the first time—that his experts will show through industry custom that paying a doctor $40.00 an hour is not reasonable compensation. The expert reports opine that most providers would not agree to be compensated only $40.00 an hour and allow their employer to bill for their services. *See* Docket No. 38-2, pg. 7; Docket No. 44-1, pg. 7. But we do not see how this testimony fits the facts of this case because it is well-known that industry norms for compensation are different in Puerto Rico—which the expert reports do not mention—and there is no record support for the idea that Reyes-Vizcarrando would not have agreed to orally assign his billing rights for only $40.00 an hour because that is too little compensation. People are generally free to agree to contract terms that do not reflect industry norms. So the fact that most providers would not have agreed to only $40.00 an hour is not relevant to this case

unless there is evidence that Reyes-Vizcarrando would not have, either. Even then, the proposed expert testimony might still be inadmissible. But that is an issue for a later day. For now, we do not see how this proposed testimony "is relevant and fits the facts of the case." *Shay*, 57 F.3d at 133; *see id.* at 133 n.5 ("The concept of 'fit' requires that a valid connection exist between the expert's testimony and a disputed issue.").

## II.

In sum, the Court **GRANTS** the United States' motion to exclude Reyes-Vizcarrando's expert testimony (Docket No. 54). But we add a caveat. If Reyes-Vizcarrando provides other grounds to admit his expert testimony, we may reconsider excluding it.

One final point. Reyes-Vizcarrando argues that the United States' motion is untimely because the Court had set a motions deadline on April 27, 2021, for June 15, 2021, with the understanding that trial would take place in August or September 2021. Docket No. 37. But on November 10, 2021, we set a trial date for March 7, 2022, discussed motions *in*

*limine*, and set several new deadlines. Docket No. 43. And the United States showed good cause for its failure to file its motion by our June 15, 2021, deadline: One of the expert's reports was still being prepared when Reyes-Vizcarrando filed his expert notice on June 14, 2021. Docket No. 54, pg. 5; *see also* Docket No. 38, pg. 1. So the United States could not have filed its motion on time. In any event, resolving this dispute now benefits Reyes-Vizcarrando. Now he can alter his trial strategy accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of February 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE